**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| NORMAN L. SCOTT, SR.,<br>*Plaintiff*,<br>v.<br>THE COOPER HEALTH SYSTEM,<br>*Defendant*. | HONORABLE KAREN M. WILLIAMS<br>Civil Action<br>No. 22-4123 (KMW) (SAK)<br>**OPINION** |

APPEARANCES:

**NORMAN L. SCOTT, SR.**
1175 Marlkress Road
Unit 3658
Cherry Hill, NJ 08034

*Pro se Plaintiff*

**ALYSSA LOTT, ESQ.**
**JOSEPH G. ANTINORI, ESQ.**
Brown and Connery, LLP
360 Haddon Avenue
Westmont, NJ 08108

*Counsel for Defendant*
*The Cooper Health System*

## I. INTRODUCTION

This matter comes before the Court on Defendant Cooper Health System's ("Defendant") Motion for Summary Judgment. (Dkt. No. 132.) Plaintiff Norman L. Scott, Sr. ("Plaintiff"), proceeding *pro se*, opposes the Motion (Dkt. No. 133), and Defendant replied (Dkt. No. 135). For the reasons that follow, Defendant's Motion is **GRANTED**.

Plaintiff alleges that Defendant unlawfully discriminated against him when it declined to hire him for a Biomedical Specialist II position in May 2021. While this action was pending, Plaintiff filed for Chapter 7 bankruptcy but failed to disclose this lawsuit as an asset, notwithstanding his obligation to disclose claims against third parties, including employment

disputes and rights to sue. Plaintiff subsequently received a discharge of more than $638,000 in debt. Only after the bankruptcy case had closed and Plaintiff faced judicial-estoppel arguments in other employment litigation did he move to reopen his bankruptcy proceeding and amend his schedules to identify this action.

Defendant argues that Plaintiff should be judicially estopped from continuing to pursue an action that he failed to disclose while obtaining the benefits of bankruptcy. The Court agrees. Plaintiff's pursuit of this action is irreconcilably inconsistent with his representations to the Bankruptcy Court, the record supports an inference of bad faith that Plaintiff has not rebutted, and dismissal is appropriately tailored to protect the integrity of the judicial process.

## II. BACKGROUND

In May 2021, Plaintiff applied for a Biomedical Specialist II position in Defendant's Biomedical Engineering Department. (Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 3, 6, Dkt. No. 132-2.) The position provided field-service technical support to Defendant's ambulatory sites and involved, among other responsibilities, inspecting, calibrating, and repairing medical equipment at multiple locations. (*Id.* ¶¶ 7-19.) Edward Snyder, Defendant's Director of Healthcare Technology and the hiring manager for the position, interviewed Plaintiff on May 5, 2021. (*Id.* ¶¶ 4, 21.)

Plaintiff had biomedical engineering and maintenance experience, but his resume and application did not identify prior field-service experience. (*Id.* ¶¶ 22, 24.) According to Defendant, Snyder confirmed during the interview that Plaintiff lacked such experience and would require field-service training. (*Id.* ¶ 25.) Defendant ultimately hired Steven Walter, whose resume reflected three years of biomedical field-service experience. (*Id.* ¶¶ 33-39.) Walter, like Plaintiff, is an

African-American male. (*Id.* ¶ 36.) Defendant maintains that Walter's prior field-service experience was the reason he was selected. (*Id.* ¶¶ 38-43.)

Plaintiff disputes portions of Defendant's account. In a declaration submitted in opposition to summary judgment, Plaintiff states that he was qualified for the position and could perform its field-service duties without additional training. (Pl.'s Decl. ¶¶ 3, 19, Dkt. No. 133-2.) Plaintiff further states that another Defendant representative whom he knew as "Sandy" participated in his interview, that comments were made about his dreadlocks, hair, and beard, and that Snyder made a remark concerning Plaintiff's bowtie. (*Id.* ¶¶ 5-11.) Plaintiff also contends that Defendant received false and negative information about him from his former employer, Children's Hospital of Philadelphia ("CHOP"). (*Id.* ¶¶ 13-18.) Defendant denies these allegations.

Plaintiff filed the present action on May 25, 2022. (SUMF ¶ 55.) On December 6, 2022, while this action remained pending, Plaintiff filed a petition for Chapter 7 bankruptcy. (*Id.* ¶¶ 70-71.) As part of those proceedings, Plaintiff filed a Schedule A/B requiring him to disclose his assets. (*Id.* ¶¶ 72-76.) The Schedule specifically asked whether Plaintiff possessed any "[c]laims against third parties," including "employment disputes" and "rights to sue." (*Id.* ¶¶ 77-78.) Plaintiff checked "No." (*Id.* ¶ 80.) He verified under penalty of perjury that the information contained in the Schedule was true and correct. (*Id.* ¶ 81.)

At the time, however, Plaintiff had been litigating this action for approximately nine months. (*Id.* ¶¶ 55, 79.) During the bankruptcy proceeding, Plaintiff also continued taking steps to prosecute this case, including seeking reissuance of the summons. (*See* Dkt. Nos. 13-17.) On May 26, 2023, the Bankruptcy Court discharged $638,666.75 in debt, and Plaintiff's bankruptcy case subsequently closed. (SUMF ¶ 82.)

On August 7, 2023, Plaintiff moved to reopen the bankruptcy proceeding to amend his schedules. (*Id.* ¶¶ 83-84.) The amended Schedule disclosed this action and three lawsuits Plaintiff had brought against CHOP. (*Id.* ¶ 86.) Plaintiff sought reopening after CHOP had moved to dismiss those lawsuits on judicial-estoppel grounds based upon his failure to disclose them during the bankruptcy proceeding. (*Id.* ¶ 85.) The Bankruptcy Court thereafter closed the reopened case on January 4, 2024. Plaintiff maintains that the amendment cured his prior omission and denies that he acted in bad faith. (Dkt. No. 133 at 2; Pl.'s Decl. ¶¶ 21-25.)

## III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine where "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of identifying portions of the record demonstrating the absence of a genuine dispute of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the nonmoving party to identify specific facts showing a genuine issue for trial. *Id.* In considering the motion, the Court views the facts and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party, however, may not rely upon "mere allegations, general denials or . . . vague statements" to withstand summary judgment. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992).

## IV. DISCUSSION

### a. Judicial Estoppel

Judicial estoppel is an equitable doctrine designed to prevent a litigant from asserting a position that is inconsistent with one previously asserted before a court. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996); *see Williams v. Hershey Co.*, No. 12-9394, 2023 WL 4197133, at *3 (D.N.J. June 26, 2023) (Williams, J.). The doctrine serves to prevent litigants from "playing fast and loose with the courts" and to protect the integrity of the judicial process. *Id.* Judicial estoppel may be appropriate where: "(1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Danise v. Saxon Mortg. Servs.*, 738 F. App'x 47, 50 (3d Cir. 2018) (quoting *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001)).

#### *i. Plaintiff Took Irreconcilably Inconsistent Positions*

There is no genuine dispute that Plaintiff took irreconcilably inconsistent positions in this action and before the Bankruptcy Court.

A bankruptcy debtor bears an affirmative and continuing duty to disclose assets, including contingent legal claims. *See Danise*, 738 F. App'x at 50-51; *Ryan Operations*, 81 F.3d at 361-62. Here, Plaintiff filed this lawsuit in May 2022. Months later, while the lawsuit remained pending, Plaintiff represented in his bankruptcy Schedule A/B that he had no claims against third parties, even though the form expressly identified employment disputes and rights to sue as examples of claims requiring disclosure. Plaintiff made that representation under penalty of perjury and thereafter obtained a discharge of more than $638,000 in debt.

Plaintiff's representation to the Bankruptcy Court that he possessed no such claim cannot be reconciled with his simultaneous prosecution of this employment-discrimination action. Accordingly, the Court finds that first requirement for judicial estoppel is satisfied.

***ii. The Record Supports an Inference of Bad Faith***

The Court also concludes that Plaintiff has failed to create a genuine dispute concerning bad faith.

A rebuttable inference of bad faith may arise where the record establishes that a debtor knew of a claim and had a motive to conceal it despite an affirmative duty of disclosure. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003). Both circumstances are present here.

Plaintiff plainly knew of this action. He personally filed it approximately seven months before seeking bankruptcy protection and continued taking steps to prosecute it during the bankruptcy proceedings. Indeed, after filing his Schedule A/B, Plaintiff sought reissuance of a summons in this case and responded to this Court's Order to Show Cause concerning service. (*See* Dkt. Nos. 13, 15.) Plaintiff likewise possessed a financial motive to omit a potentially valuable litigation asset while seeking discharge of substantial debt.

Plaintiff's opposition does not offer evidence reasonably explaining the omission. He states only that, "[w]hen [he] realized" the lawsuit had not been listed, he moved to reopen the bankruptcy and amended his schedules, and he declares that he did not intend to conceal the action. (Pl.'s Decl. ¶¶ 22-24, Dkt. No. 133-2.) Those conclusory assertions do not rebut the inference arising from the undisputed chronology. Plaintiff knew of this lawsuit when he filed the bankruptcy schedules, continued prosecuting it while the bankruptcy was pending, and did not seek to correct

the omission until after his debts had been discharged, the bankruptcy case had closed, and the omission had been raised as a basis for dismissal of his other pending employment lawsuits.

Nor does Plaintiff's subsequent reopening of the bankruptcy proceeding compel a different result. The Third Circuit has rejected the proposition that a debtor may necessarily avoid judicial estoppel by amending bankruptcy disclosures only after the omission has been exposed. *See Krystal Cadillac*, 337 F.3d at 321. As the Court of Appeals explained, permitting such belated amendment to defeat judicial estoppel would diminish the incentive for debtors to provide complete and truthful disclosures in the first instance. *Id.*

Plaintiff emphasizes that the Bankruptcy Court permitted reopening, accepted the amended disclosure, and later closed the case. (Dkt. No. 133 at 2-3.) Those events establish that Plaintiff ultimately disclosed this lawsuit; they do not erase the prior nondisclosure or demonstrate that it was made in good faith. On this record, Plaintiff has failed to adduce evidence from which a reasonable factfinder could conclude that the inconsistent positions resulted from a good-faith mistake rather than conduct sufficient to warrant application of judicial estoppel.

### *iii. Judicial Estoppel Is Appropriately Tailored*

Finally, application of judicial estoppel is appropriately tailored to the misconduct at issue.

Judicial estoppel is an extraordinary remedy and should not be imposed unless a lesser sanction would inadequately protect the integrity of the judicial process. *Montrose*, 243 F.3d at 779-80. Here, however, the undisclosed asset is the very lawsuit Plaintiff now seeks to prosecute for his own benefit. Plaintiff obtained the benefit of a substantial bankruptcy discharge without identifying this pending claim among his assets. Allowing him now to continue pursuing monetary recovery on that undisclosed claim would permit him to retain the benefit of the inconsistent positions he asserted before two federal courts.

Accordingly, the Court finds that no lesser remedy adequately addresses the harm occasioned by Plaintiff's nondisclosure. Plaintiff is judicially estopped from maintaining this action, and Defendant is entitled to summary judgment.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 132) is **GRANTED**. An Order consistent with this Opinion will be entered.

Dated: August 21, 2026

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE